UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SANDRA CUNDIFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:06-CV-437 |
| ) | (GUYTON) |
| RODNEY D. POSTEL, Individually, and in ) | |
| his official capacity, BLOUNT COUNTY ) | |
| SHERIFF, JAMES BERRONG, Individually, ) | |
| and in his official capacity, and BLOUNT ) | |
| COUNTY, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 11], on the Motion to Dismiss and Motion for Summary Judgment [Doc. 20] of defendants Blount County (the "County"), Rodney D. Postel ("Deputy Postel"), and James Berrong ("Sheriff Berrong") in their official capacity (collectively, the "County Defendants")[1], the Motion for Summary Judgment [Doc. 22] of defendants Rodney D. Postel and James Berrong in their individual capacities (collectively, the "Individual Defendants"), and plaintiff Sandra Cundiff's ("Plaintiff") Motion in Limine. [Doc. 31] The parties appeared before the Court for a hearing on the plaintiff's motion on February 19, 2008, and for a hearing on the dispositive motions on

---

[1] As "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," Pusey v. City of Youngstown, 11 F.3d 652, 658 (6th Cir. 1993) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)), the Court will consider the official capacity claims against Deputy Postel and Sheriff Berrong in conjunction with the claims against the County.

February 26, 2008. At both hearings, attorney Janet Leach Hogan appeared on behalf of the plaintiff, attorney Carl P. McDonald appeared on behalf of the County Defendants, and attorney Gary M. Prince appeared on behalf of the Individual Defendants. After the hearings, the Court took the motions under advisement and they are now ripe for adjudication. For the reasons stated more fully below, Plaintiff's motion [Doc. 31] will be **GRANTED in part** and **DENIED in part**, the motions for summary judgment of the County Defendants [Doc. 20] and Individual Defendants [Doc. 22] will be **GRANTED**, all federal claims will be **DISMISSED with prejudice**, and all state law claims will be **DISMISSED without prejudice**.

## I. Procedural Background

On November 14, 2006, Plaintiff filed the instant action pursuant to 42 U.S.C. § 1983. [Doc. 1 at ¶ 1] Plaintiff asserts claims of excessive force, unlawful arrest, and a failure to provide due process, all in violation of her rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, as well as state law claims of assault and battery and outrageous conduct. [Id. at ¶¶ 14, 18]

Plaintiff's claims stem from her encounter with law enforcement officers on the night of November 19, 2005, an encounter which terminated in Plaintiff's vehicle being forced off the road, causing Plaintiff to be ejected from her vehicle. [Id. at ¶ 7] Plaintiff alleges that Deputy Postel used excessive force when he forced Plaintiff's vehicle off the road, that Deputy Postel lacked probable cause to arrest, and that the County and Sheriff Berrong were also liable for failing to properly train and supervise Deputy Postel, as well as for failing to implement procedures governing the proper use of the maneuver Deputy Postel used to force Plaintiff off the road. [Id. at ¶¶ 8, 10, 14] The defendants deny the allegations, arguing that Deputy Postel exercised a reasonable amount of force,

that it was necessary to stop Plaintiff, and that the County and Sheriff Berrong have no liability in this matter. [Docs. 6, 7] The defendants further contend that, subsequent to filing the instant litigation, Plaintiff pled guilty to Felony Evading Arrest, and thus should be estopped from presenting any arguments in the instant litigation that would run contrary to her guilty plea. [Docs. 15, 18]

On April 20, 2007, the parties consented to the jurisdiction of the undersigned for all further proceedings, including entry of judgment, pursuant to 28 U.S.C. § 636(c). [Doc. 11] The instant motions followed. Because the Court's ruling on the Motion in Limine will necessarily affect what evidence the Court considers when ruling on the dispositive motions, the Court will address the Motion in Limine before setting forth the facts relevant to the dispositive motions.

**II.     Motion in Limine [Doc. 31]**

Plaintiff moves the Court to exclude from evidence any reference to Plaintiff's blood-alcohol test results, a dismissed DUI charge, her guilty plea to evasion, as well as any reference to Deputy Postel's subjective intentions, all of which the defendants address in their dispositive motions. As grounds, Plaintiff contends that Deputy Postel's decision to exercise force when stopping Plaintiff must be considered based only upon the information available to the Deputy at the time of the incident, arguing that the Court cannot consider any subsequent events, such as those the defendants seek to introduce, and also arguing that Deputy Postel's subjective intentions are irrelevant, because the Court must analyze the deputy's actions under an objective reasonableness standard. The defendants oppose the motion, arguing that the information presented by the defendants is relevant and appropriate for the Court to consider when ruling on the dispositive motions.

The United States Supreme Court has held that:

3

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the judge's chambers" violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Graham v. Connor, 490 U.S. 386, 396-97 (1989) (internal citations omitted). Thus, Plaintiff is correct in arguing that the Court must consider only the facts and circumstances as they existed at the time of the incident, and should not consider any facts that came to light after the incident.

However, the Court's analysis is complicated by the fact that Plaintiff has pled guilty to felony evasion. For while the Court acknowledges the Supreme Court's ruling in Graham, the Court must also consider the case of Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a

> conviction or sentence that has not been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

Id. at 486-87. Additionally, the Court notes that the preclusive effect of state-court decisions in § 1983 actions is a matter of state law. Id. at 480. Under Tennessee law, collateral estoppel is appropriate where: (1) the issue sought to be precluded is identical to the issue decided in the earlier suit; (2) the issue was actually litigated and decided on its merits in the earlier suit; (3) the judgment in the earlier suit has become final; (4) the party against whom collateral estoppel is sought was a party to the earlier suit; and (5) the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue sought to be precluded. Beaty v. McGraw, 15 S.W.3d 819, 824-25 (Tenn. Ct. App. 1998). It is likewise clear that, under Tennessee law, a criminal conviction will have a preclusive effect on a subsequent civil suit in which the party convicted on his own guilty plea seeks to assert that he did not convict the criminal act for which he was convicted. See Gibson v. Trant, 58 S.W.3d 103, 114 (Tenn. 2001) (holding that estoppel is appropriate where a defendant pleads guilty to a substantial criminal charge and then seeks in civil litigation concerning the same transaction to assert that he did not commit the criminal act.)

Turning to the instant case, on April 2, 2007, Plaintiff pled guilty to Class D Felony Evading Arrest. [Doc. 20, Exhibit 4 to Affidavit of James L. Berrong] Codified at Tennessee Code Annotated § 39-16-603, Tennessee law provides, in pertinent part, that:

5

> (b) (1) It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop.
>
> (2) It is a defense to prosecution under this subsection (b) that the attempted arrest was unlawful.
>
> (3) A violation of subsection (b) is a Class E felony unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties, in which case a violation of subsection (b) is a Class D felony.

Thus, under Tennessee law, the elements of Class D felony evading arrest are: (1) intentionally fleeing law enforcement after being directed to stop; (2) the attempted arrest must be lawful; and (3) the flight creates a risk of death or injury to innocent bystanders or other third parties. In light of Plaintiff's guilty plea, which satisfies all of the elements of collateral estoppel under Tennessee law, Plaintiff is therefore estopped from asserting any claim or argument that would invalidate any of these elements. Accordingly, the Court finds that, because of the preclusive effect of Plaintiff's guilty plea, evidence of Plaintiff's guilty plea has some limited relevance and should not be excluded at this stage of the proceedings.

However, while the guilty plea is relevant, the other evidence Plaintiff seeks to exclude, including the results of the blood-alcohol test, the dismissed DUI charge, and Deputy Postel's subjective intentions or state of mind, all constitute evidence that falls outside the Court's reasonableness analysis. Graham, 490 U.S. at 396-97. Accordingly, Plaintiff's Motion in Limine [Doc. 31] will be **GRANTED in part**, to the extent that any evidence relating to the Plaintiff's blood-alcohol test results, the dismissed DUI charge, and Deputy Postel's subjective intentions or state of mind shall be excluded from evidence, and **DENIED in part**, to the extent that evidence of Plaintiff's guilty plea to Class D Felony evading arrest is relevant because of its preclusive effect

and shall not be excluded. Having resolved the Plaintiff's motion in limine, the Court now turns to the dispositive motions.

### III. Dispositive Motions

A. <u>Relevant Facts</u>

As the Court is required to do in reviewing a motion for summary judgment, all facts will be viewed in the light most favorable to the non-moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).[2]

On Saturday, November 19, 2005, at approximately 7:11 p.m., Plaintiff was driving a dark colored pick-up truck ("Plaintiff's Vehicle") north on Sevierville Road. [Doc. 1 at ¶ 7; Postel Video] At that same time, Deputy Postel, driving in what appears to be a westbound direction on Cherokee Street, was in the process of stopping at a stop sign at the intersection of Sevierville Road and Cherokee Street. [Postel Video; Doc. 20, Exhibit 2 to Affidavit of Deputy Postel] Plaintiff's Vehicle drove past Deputy Postel's cruiser, at which point Deputy Postel observed that Plaintiff did not have her headlights on. [Postel Video; Doc. 20, Exhibit 2 (Incident Report)] Deputy Postel turned right onto Sevierville Road and began to follow Plaintiff. [Postel Video]

At approximately 7:11:21 p.m., Deputy Postel caught up to Plaintiff and activated his emergency lights. [Id.] A few seconds later, Deputy Postel directed his spotlight at the back of Plaintiff's Vehicle. [Id.] At approximately 7:11:29 p.m., Plaintiff turned on her right turn signal.

---

[2]In establishing the relevant facts, the Court relies heavily on the video footage taken from Deputy Postel's in-cruiser camera. A compact disc containing the relevant footage from Deputy Postel's in-cruiser camera was filed as Doc. 20, Exhibit 4 to Affidavit of Rodney D. Postel. For ease of reference, the Court refers to this footage as the "Postel Video." The County Defendants also filed a VHS tape containing footage from Deputy Donald's in-cruiser camera as Doc. 20, Exhibit 5 to Affidavit of Rodney D. Postel, which will be referred to as the "Donald Video."

[Id.] At approximately 7:12:23 p.m., Plaintiff's Vehicle crosses the solid white line on the right side of the road, almost striking a tree. [Id.] At approximately 7:12:29 p.m., Deputy Postel activates his siren. At approximately 7:12:36 p.m., 7:13:11 p.m., and 7:13:41 p.m. Plaintiff's Vehicle crosses the solid white line on the right side of the road. [Id.] At approximately 7:13:43 p.m., Plaintiff's Vehicle crosses the double yellow line separating the two lanes of traffic. [Id.] At approximately 7:13:47 p.m., Plaintiff's Vehicle pulls off onto the shoulder on the right side of the road and begins to stop. [Id.] At approximately 7:13:58 p.m., Plaintiff's Vehicle comes to an almost complete stop on the shoulder of the road, but immediately resumes driving northbound on Sevierville Road. [Id.]

At approximately 7:14:03 p.m., Deputy Postel uses his cruiser's loud speaker to direct Plaintiff to "stop the vehicle." [Id.] At about the same time, a second police cruiser, presumably Deputy Donald's, passes Plaintiff's Vehicle from the opposite direction. [Id.] At approximately 7:14:19 p.m., Plaintiff's Vehicle crosses the double yellow lines. At approximately 7:14:32 p.m., Plaintiff's Vehicle again crosses the double yellow lines, almost striking an oncoming vehicle. At approximately 7:14:42 p.m. Plaintiff passes a well lit gas station on the right side of the road. At approximately 7:15:12 p.m., Plaintiff's Vehicle crosses the double yellow lines and almost strikes an oncoming vehicle. At approximately 7:15:31, Plaintiff's Vehicle crosses the double yellow lines, again almost striking an oncoming vehicle, then veering across the solid white line on the right side of the road, and veering back across the double yellow line, before resuming travel in her lane of traffic. [Id.]

At approximately 7:15:51 p.m., Deputy Postel pulls into the opposite lane of traffic, pulls up beside Plaintiff's Vehicle, and executes a "Precision Intervention Technique" ("PIT"), striking Plaintiff's rear left bumper with his right front bumper. [Id.] Plaintiff's Vehicle then spins into the

8

opposite lane of traffic, continues off the road, strikes a tree, and comes to a stop. [Id.; Donald Video] As a result of the collision between Plaintiff's Vehicle and Deputy Postel's cruiser, Plaintiff was thrown from her Vehicle and onto the road, causing her to sustain serious injuries. [Donald Video; Doc. 1 at ¶ 7]

Throughout the pursuit, Plaintiff's driving is, at best, erratic, with Plaintiff's Vehicle weaving back and forth multiple times. [Postel Video] From the point when Deputy Postel activated his emergency lights to the point when Deputy Postel's vehicle struck Plaintiff's Vehicle, the pursuit lasted approximately four and a half minutes. [Id.] Although the Postel Video has an area set aside to denote the speed at which Postel's cruiser was traveling, the copy of the Postel Video in evidence does not indicate the actual speed of the pursuit. [Id.] On April 2, 2007, Plaintiff pled guilty to Class D felony Evading Arrest, as codified at Tennessee Code Annotated § 39-16-603. [Doc. 20, Exhibit 4 to Affidavit of Sheriff Berong]

B.  Standard of Review

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., 475 U.S. at 587. To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine

9

issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Id. at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

C.     Positions of the Parties

The County Defendants move the Court to grant them summary judgment with respect to Plaintiff's federal claims and further move the Court to dismiss the Plaintiff's state law claims for lack of jurisdiction. [Doc. 20] Similarly, the Individual Defendants move the Court to grant them summary judgement as to all claims against the Individual Defendants. As grounds, the defendants argue that there was no constitutional violation and thus are entitled to qualified immunity. Plaintiff opposes the motions, arguing that there are questions of material fact as to whether her rights were violated, and thus that summary judgment is inappropriate.

D.     § 1983 Claims

A prima facie case under § 1983 has two elements: "(1) the defendant must be acting under the color of state law, and (2) the offending conduct must deprive the plaintiff of rights secured by federal law." Bloch v. Ribar, 156 F.3d 673, 677 (6th Cir. 1998) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). To succeed on a § 1983 claim against a local government, the plaintiff must also

prove that the injury about which she complains was caused by an unconstitutional government policy or custom. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."). There is no question that Deputy Postel was acting under color of state law when he attempted to stop Plaintiff. Thus, to state a prima facie case, Plaintiff must establish that the defendants violated one of Plaintiff's rights secured by federal law.

To establish this element of her claim, Plaintiff asserts violations of her rights under the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution, alleging that the defendants: deprived her of her right to be secure in her person and property; deprived her of liberty without due process of law; deprived her of her right to be free from excessive force; and deprived her of her right to be free from arrest without probable cause. The United States Supreme Court has held that, when faced with competing claims of excessive force and due process violations stemming from the same incident, courts are to analyze the claims using an excessive force reasonableness standard, not a substantive due process approach. Graham v. Connor, 490 U.S. 386, 395 (U.S. 1989). Thus, Plaintiff effectively alleges two separate constitutional violations: unlawful arrest and excessive force. The Court will examine each of these constitutional bases in turn.

1. Unlawful Arrest

The first basis for Plaintiff's § 1983 claim is that the she was unlawfully arrested without probable cause. However, as the Court noted above, Plaintiff is estopped from asserting any claims that would contravene the effects of her guilty plea to Class D felony Evading Arrest. The evading arrest statute provides that "it is a defense to prosecution under this subsection (b) that the attempted arrest was unlawful." Tenn. Code Ann. § 39-16-603(b)(2). Thus, if the attempted arrest which

11

plaintiff admitted she was fleeing was unlawful, that would have been a defense to the crime. As Plaintiff did not assert that defense, but instead pled guilty, Plaintiff is estopped from now claiming that the arrest was unlawful. Accordingly, Plaintiff's claims based upon unlawful arrest are improper and the defendants' motions for summary judgment as to the unlawful arrest claims will be **GRANTED**.

2.  Excessive Force

The second basis for Plaintiff's § 1983 claim is that Deputy Postel used excessive force when he executed the PIT maneuver. In analyzing Plaintiff's § 1983 claim, and resolving the defendants' opposing claim of qualified immunity, the Court must first resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). There is no dispute that Deputy Postel effectively "seized" Plaintiff when he executed the PIT maneuver, thus the Court focuses on the level of force used during the seizure.

The United States Supreme Court has held that a claim of excessive force must be analyzed under a Fourth Amendment objective reasonableness standard. Graham, 490 U.S. at 388. As the Court noted above:

> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: "Not every push or shove, even if it may later seem unnecessary in the judge's chambers" violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

Id. at 396-97(internal citations omitted). Additionally, the Court must "balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703 (1983). Finally, as the United States Supreme Court recently noted in Scott v. Harris, 127 S. Ct. 1769 (2007), "whether or not [the officer's] actions constituted application of "deadly force," all that matters is whether [the officer's] actions were reasonable." Id. at 1777.

In analyzing this case, the Court draws guidance from the Scott case. In Scott, the Supreme Court held that "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." Id. at 1778. Scott involved a six minute pursuit by police of a fleeing motorist at speeds in excess of eighty-five miles per hour down a narrow public street. Id. at 1772, 1774. The fleeing motorist in Scott, however, "swerve[d] around more than a dozen other cars, cross[ed] the double-yellow line, and force[d] cars traveling in both directions to their respective shoulders to avoid being hit." Id. at 1774. Thus, the facts in Scott are distinguishable, but the Scott case does provide a solid basis for the Court's analysis.

In the instant case, Deputy Postel was faced with a suspect who was driving erratically, without her headlights, down a busy road on a Saturday night. The Postel Video depicts Plaintiff's

Vehicle almost striking multiple oncoming vehicles, and Plaintiff's Vehicle repeatedly crosses both the double yellow and the solid white lines. In the instant case, however, no vehicles were forced to the side of the road to avoid Plaintiff's Vehicle. The Court also notes there is a question of fact as to the speeds the vehicles engaged in throughout the pursuit, with Plaintiff arguing that she only briefly exceeded the speed limit and the defendants arguing that the pursuit reached speeds of sixty-one miles per hour in a forty-five miles per hour zone. The fact that Plaintiff's headlights were not on only exacerbated the situation, as Plaintiff's Vehicle would have been much more visible to oncoming traffic if Plaintiff had been using her headlights, thus somewhat alleviating the danger Plaintiff's erratic driving posed to others.[3]

Plaintiff argues that she was looking for a safe place to stop on the narrow road, but the Postel Video belies Plaintiff's argument. Plaintiff at one point actually safely stopped her Vehicle on the shoulder of the road before resuming her flight, and at another point Plaintiff passed an illuminated gas station, which would have served as a safe, open, public area in which to stop. [Postel Video] While, the Court must view the facts in the light most favorable to the plaintiff, "when two opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." Scott, 127 S. Ct. at 1769. The Court finds that, in this case, no reasonable jury could believe Plaintiff's version of the facts after viewing the Postel Video.

---

[3]The Court notes that the emergency lights on Deputy Postel's vehicle would provide some level of warning to oncoming motorists. However, the emergency lights on Deputy Postel's vehicle would provide no warning to oncoming motorists of Plaintiff's erratic driving, though if Plaintiff's lights had been on, the erratic nature of Plaintiff's driving would be visible from further away.

14

Additionally, Plaintiff's guilty plea again complicates the Court's analysis. Normally, the Court would not consider the guilty plea, as that would amount to relying on 20/20 hindsight. However, the fact that Plaintiff pled guilty to the Class D felony version of evading arrest means that Plaintiff admitted that she was placing the lives of "innocent bystanders or other third parties" in danger. Tenn. Code Ann. § 39-16-603(b)(3). Additionally, watching the Postel Video confirms that Plaintiff's erratic driving was placing other motorists in danger. Plaintiff argues that her erratic driving was caused by the pursuit, and thus that any danger to the public was caused by the police pursuit. However, the Court again notes that Plaintiff has pled guilty to evading arrest, an element of which is that the attempted arrest was lawful. And as the Supreme Court noted in Scott, "we are loathe to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so *recklessly* that they put other people's lives in danger." Scott, 127 S. Ct. at 1778 (emphasis in original). Plaintiff admitted that she was fleeing from a lawful arrest, thus it would fly in the face of Scott for the Court to find that the police should have allowed Plaintiff to escape because she was driving erratically.

Plaintiff also argues that the PIT maneuver is inappropriate for use on Plaintiff's vehicle. The Court notes that in June, 2005, Deputy Postel completed a training course in use of the PIT maneuver. [Doc. 20, Affidavit of Deputy Postel at ¶ 7] According to the materials provided to Deputy Postel from that training, the PIT maneuver is "[a]cceptable" for use on most American and foreign cars, but its use is "[u]nacceptable unless Deadly Force is justified" when targeting motorcycles, jeeps, SUVs, hi-rider pick-up trucks, or vans. [Doc. 20, Exhibit 7 to Affidavit of Deputy Postel] In the instant case, Plaintiff was driving a pick-up truck, but the Postel Video shows the vehicle as being only a standard pick-up truck, not a "hi-rider." However, even if the Court were

15

to find Plaintiff's Vehicle to be a "hi-rider," the fact remains that Plaintiff, through her guilty plea, admitted to endangering the lives of others, which, under Tennessee law, authorizes the use of deadly force by law enforcement. Tenn. Code. Ann. § 40-7-108. Thus, even if Plaintiff's Vehicle were found to be a "hi-rider," use of the PIT, according to the training materials, would have still been acceptable under the facts and circumstances of this case.

The Court recognizes that the Plaintiff sustained injury as a result of the PIT maneuver. The Court, however, cannot consider that injury in determining whether Deputy Postel's use of force was reasonable, for considering that injury would fall under the impermissible use of "20/20 hindsight."

After weighing the risk to the public created by Plaintiff's flight, a risk that Plaintiff admitted existed when she entered her guilty plea, compared to the risk to Plaintiff created by the use of the PIT maneuver, the Court finds that Deputy Postel acted reasonably. The Court acknowledges that the facts in this case are in some respects distinguishable from Scott. The fact remains, however, that Plaintiff was placing the lives of other motorists in danger with her erratic driving, and even though Plaintiff had ample opportunity to stop, and in fact did stop at one point, she choose to attempt to evade the police.

In light of the Plaintiff's efforts to evade the police, and in light of her erratic behavior, Deputy Postel's actions were reasonable, and thus there was no constitutional violation. In the absence of a constitutional violation, Plaintiff's § 1983 action against Deputy Postel in his individual capacity must fail. Similarly, as Plaintiff's rights were not violated, there can be no liability on the part of Sheriff Berrong in his individual capacity. Finally, as Plaintiff has failed to state a claim under § 1983, the Court need proceed no further in the qualified immunity analysis, nor in its analysis of the claims against the County Defendants. Moore v. City of Wynnewood, 57 F.3d 924,

931 (6th Cir. 1995) ("If a plaintiff fails to state a valid claim, [the court] need not even reach the issue of the qualified immunity defense. Moreover, if [the plaintiff] fails to state a valid [constitutional] claim against [the individual capacity defendant], there would also be no liability for holding the City liable under 1983."). Accordingly, the defendants' motions will be **GRANTED** with respect to Plaintiff's claims of excessive force.

E.  State Claims

In light of the Court's ruling on Plaintiff's § 1983 claims as set forth above, the Court will decline to continue to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action. 28 U.S.C. § 1367(c). Accordingly, Plaintiff's state law claims will be **DISMISSED without prejudice**.

**IV.  Conclusion**

For the reasons set forth herein, the plaintiff's motion in limine [Doc. 31] will be **GRANTED in part** and **DENIED in part**, and the defendants' motions for summary judgment [Docs. 20, 22] will be **GRANTED**. Plaintiff's § 1983 claims will be **DISMISSED with prejudice**, while Plaintiff's state law claims will be **DISMISSED without prejudice**.

ORDER ACCORDINGLY.

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge